# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

MICHAEL HARRISON,

Petitioner,

   v.            9:20-CV-705
                  (MAD/ATB)

JAMES THOMPSON,

Respondent.

MICHAEL HARRISON, Petitioner, pro se
PRISCILLA I. STEWARD, AAG, for Respondent

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

Petitioner, currently incarcerated at Collins Correctional Facility, filed this petition pursuant to 28 U.S.C. § 2254, challenging a 2017[1] judgment of conviction in Albany County Court, based on his guilty plea to two counts of Identity Theft in the First Degree. (Dkt. No. 1, Petition ("Pet.") at 1).[2] Pursuant to a plea agreement,

---

[1] Petitioner erroneously alleges that the judgment of conviction and sentence were imposed in 2020; however, the state record makes clear that petitioner's judgment of conviction was rendered in 2017, and he was sentenced in 2018.

[2] The citations for the Petition and Respondent's Memorandum of Law refer to the pagination generated by the court's electronic filing system ("CM/ECF"). Citations to the State Court Record ("SR"); New York Crimial Procedure Law ("C.P.L.") § 30.30 Hearing ("§ 30.30 Hearing"); August 25, 2017 Court Conference ("8/25/17 Conf."); November 9, 2017 Court Conference ("11/9/17 Conf."); Plea Allocution ("PA"); December 15, 2017 Court Conference ("12/15/17 Conf."); and Sentencing refer to their original pagination.

petitioner was sentenced to serve two consecutive two-and-a-half to five year terms of imprisonment. (*Id.*). The Appellate Division, Third Department unanimously affirmed petitioner's conviction, and the New York Court of Appeals denied leave to appeal. *People v. Harrison*, 176 A.D. 3d 1262 (3d Dep't 2019), *lv. denied*, 34 N.Y. 3d 1016 (2019).

Petitioner raises the following claims for this court's review:

1.    Petitioner's state and federal rights to a speedy trial were violated.

2.    Petitioner's *Miranda* rights were violated.

3.    Petitioner received ineffective assistance of counsel.

4.    Petitioner's guilty plea was not knowing and voluntary because (i) he was under the influence of marijuana at the plea allocution and (ii) his attorney coerced him into pleading guilty.

5.    Petitioner's waiver of his appellate rights was invalid.

(Pet. at 6-12). Respondent has filed an answer to the petition, together with the pertinent state court records and a memorandum of law. (Dkt. Nos. 12, 13). For the following reasons, this court agrees with respondent and will recommend dismissal of the petition.

## DISCUSSION

## I.    <u>Relevant Facts</u>

Respondent has included a detailed description of the facts and procedural history of this case. (Dkt. No. 12-1 at 5-12). The court will summarize and supplement

the facts as necessary for clarity and to discuss the grounds raised by petitioner.

### A.    Pre-Trial Proceedings

On December 20, 2016 petitioner was charged in an indictment alleging six counts of Identity Theft in the First Degree, six counts of Criminal Possession of a Forged Instrument in the Second Degree, and two counts of Grand Larceny in the Fourth Degree. (SR 114-27).

Arraignment was scheduled for January 4, 2017. (SR 150-59). That morning, defense counsel Stephen Rockmacher appeared and stated that the petitioner was not present and did not intend to appear. (SR 151). Mr. Rockmacher also stated that he had experienced "a breakdown in the attorney/client relationship" with petitioner, to the extent counsel had been asked to cease appearing in court on petitioner's behalf. (*Id.*). The court issued a bench warrant. When the court reconvened later that morning, petitioner appeared, denied that he was Michael Harrison, and stated that he was "an agent for that corporation." (SR 152). Judge Lynch found that petitioner was obstructing the court and remanded him for arraignment the following morning. (SR 153).

The court reconvened on January 5, 2017, granted Mr. Rockmacker's motion to withdraw as counsel, and appointed the public defender's office to represent petitioner. (SR 154-56). Petitioner entered a plea of not guilty and was released on bail. (SR 157-59).

The parties returned to court on August 11, 2017 to address, among other things, petitioner's motion to dismiss certain counts of the indictment under the speedy trial provision of C.P.L. § 30.30. (§ 30.30 Hearing 1- 35).  Specifically, petitioner argued that Mr. Rockmacher's May 26, 2016 letter (SR 136), adopting the December 22, 2015 speedy trial waiver submitted by petitioner's previous attorney, David Swyer (SR 135), did not contemplate Counts 1 through 7 of the indictment.  (§ 30.30 Hearing 4-24). Thus, petitioner argued, Counts 1 through 7 were subject to dismissal based on the government's failure to prosecute these charges within six months.  (*Id.*).  In opposition, the government argued that petitioner, through Mr. Rockmacher's letter, intended to waive his speedy trial rights, associated with all of his pending criminal matters as of May 26, 2016, in the hopes of securing a global resolution to the various charges.  (*Id.*).  The court denied petitioner's motion, finding that the government properly relied on Mr. Rockmacher's waiver as encompassing all charges pending against petitioner as of May 2016.  (§ 30.30 Hearing  25).

The parties appeared for a subsequent court conference on August 25, 2017. (8/25/17 Conf. 1-5).  At that time, the government withdrew a previously offered plea bargain and stated that there would be no further offers in the case.  (8/25/17 Conf. at 3- 4).  At the same proceeding, petitioner asked if he could retain "better . . . counsel." (8/25/17 Conf. at 4).  The court advised that petitioner had the right to hire his own attorney. (8/25/17 Conf. at 5).

4

On November 9, 2017, petitioner failed to show up for a scheduled court appearance regarding the government's revised *Molineux*[3] proffer.  (11/9/17 Conf. 1-8).  The court granted the government's request for a bench warrant, and determined that the *Molineux* issue would be revisited the following week, on the morning of trial.  (11/9/17 Conf.  5-6).

### B.    Guilty Plea Allocution

The parties appeared for a jury trial on November 13, 2017.  However, before trial commenced, petitioner through his counsel accepted a plea proposal offered by the government that morning.  (PA 10).  The terms of the plea agreement were that petitioner would plead guilty to Count 1 (Identity Theft in the First Degree) and Count 8 (Identity Theft in the First Degree), in full satisfaction of the fourteen count indictment, as well as additional, subsequently charged and uncharged crimes.[4]  (PA 10-11).  Petitioner would be sentenced to two-and-a-half to five years of imprisonment on each count, to run consecutively for a total of five to ten years.  (*Id.*). Petitioner confirmed to the court that he wished to accept the terms of the plea agreement.  (PA 14).  Petitioner was thereafter sworn in, and the court led him through a lengthy allocution before accepting petitioner's guilty plea.  (PA 14-23).

---

[3] *People v. Molineux*, 168 N.Y. 264 (1901) (determining the admissibility of prior bad acts).

[4] It appears that petitioner was arrested on November 10, 2017, three days prior to his trial date, for several charges, including Forgery, Criminal Mischief, Resisting Arrest, and various Vehicle and Traffic charges.  (PA at 10).

### C.    Motion to Withdraw Guilty Plea and Sentencing

Prior to sentencing, petitioner wrote to the court indicating that he sought new legal counsel and was seeking to vacate his guilty plea.  Thus, on December 15, 2017, the court relieved the public defender's office and assigned attorney Carmelo Laquidara as petitioner's attorney.  (12/15/17 Conf. 5).

On January 8, 2018, the court entertained petitioner's motion to withdraw his guilty plea.  (Sentencing 1-13).  Petitioner's argument was twofold–first, he contended that he did not have enough time to thoroughly investigate the November 10, 2017 charges against him in order to enter a knowing, intelligent, and voluntary plea which contemplated and resolved those charges only three days later, on November 13, 2017.  (Sentencing 3-4).  Petitioner maintained that his former counsel coerced him into accepting the plea deal, despite the fact that not enough time had passed for counsel to evaluate the merits, proof, and defenses regarding the new charges.  (Sentencing 5).  Second, petitioner argued that he was under the influence of marijuana at the time he entered the guilty plea.[5]  (*Id.*).

The court denied petitioner's motion to withdraw his guilty plea.  (Sentencing 11).  The court found that, after petitioner's most recent arrest, his attorney met with him on two separate occasions to discuss strategy.  (Sentencing 11).  Counsel for both

---

[5]Mr. Laquidara conceded that petitioner was "smoking pot at the Albany County Jail" while in custody after his November 10, 2017 arrest.  (Sentencing 5).

parties were prepared to move forward with trial, and "[n]obody forced the defendant to do anything." (*Id.*). Moreover, at the plea allocution, petitioner was asked a "series of questions to make sure that his plea was knowing, intelligent, and voluntary." The "court was satisfied that the defendant's waiver of his trial and appellate rights was voluntarily made." (*Id.*).

Petitioner was then adjudicated a second felony offender and sentenced to a prison term of two-and-a-half to five years on each count of Identity Theft in the First Degree, to be served consecutively for a total of five to ten years imprisonment. (Sentencing 18, 22-23).

### D.    Direct Appeal

With the assistance of counsel, petitioner filed an appeal with the Third Department Appellate Division, arguing that (1) the "purported" appellate waiver was invalid, (2) the trial court erred in denying petitioner's speedy trial motion, (3) petitioner's guilty plea was not knowing and voluntary, and (4) trial counsel was ineffective for coercing petitioner into pleading guilty. (SR 238-52). On October 3, 2019, the Appellate Division unanimously affirmed the judgment of the trial court. *People v. Harrison,* 176 A.D. 3d 1262 (3d Dep't 2019). First, the court determined that petitioner's plea colloquy demonstrated that "he knowingly, voluntarily, and intelligently waived his right to appeal." *Id.* at 1263-64. To this end, the court rejected petitioner's contention that the trial court abused its discretion in denying his motion to

withdraw the plea without a hearing, "as there [was] nothing in the record to

substantiate [petitioner's] contentions or cast doubt upon [petitioner's] guilt. *Id*. The

court further rejected petitioner's argument that he was deprived of his "statutory right

to a speedy trial," as this claim was "forfeited by [petitioner's] guilty plea and . . .

precluded by his valid appeal waiver[.]" *Id.* at 1264. Last, the Appellate Division

addressed petitioner's argument that his plea was involuntary because he was denied

the effective assistance of counsel, i.e. that prior counsel pressured him to accept the

plea agreement and failed to adequately investigate and discuss the new charges against

him. The court found that this issue concerned matters "outside of the record, and

[was] properly the subject of a C.P.L. article 440 motion." *Id.* Thus, plaintiff's appeal

was denied in all aspects.

On November 29, 2019, the Court of Appeals denied petitioner's application for

leave to appeal. (SR 296).

## II.    **Generally Applicable Law**

### A.    **Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")**

The AEDPA provides that, when a state court has adjudicated the merits of a

petitioner's constitutional claim, a federal court may grant an application for a writ of

habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States; or (2) resulted in a decision

that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008).  This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

To determine whether a state-court decision is contrary to clearly established Supreme Court precedent, the federal court must consider whether the state court decision "'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Id*. at 182  (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)) (alterations in original).  A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case.  *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo*.  *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).  Finally, the

Supreme Court has held that circuit and district court decisions do not constitute "clearly established Federal Law, as determined by the Supreme Court." *Parker v. Matthews*, 567 U.S. 37, 40 (2012). Instead, circuit court decisions may illustrate the "possibility" of fairminded disagreement, sufficient to justify denying the writ. *White v. Woodall*, 572 U.S. 415, 422 n.3 (2014).

### B.     Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional

10

litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir. 1982)).

Where a petitioner has failed to exhaust his claims, but he cannot return to state court, petitioner's claims are then "deemed" exhausted, but barred by procedural default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). The merits of such a procedurally defaulted claim may not be reviewed by a federal court unless the petitioner can show both cause for the default and actual prejudice resulting from the alleged violation of  federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas, supra*. "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

## C.    Adequate and Independent State Ground Doctrine

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal

11

claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977).  A federal habeas court

generally will not consider a federal issue if the last state court decision to address the

issue "'rests on a state law ground that is independent of the federal question and

adequate to support the judgment.'"  *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir.

2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added).  This rule

applies whether the independent state law ground is substantive or procedural.  *Id*.

When the independent and adequate state ground supporting a habeas petitioner's

custody is a state procedural default, additional concerns come into play. *Coleman v.

Thompson*, 501 U.S. 722, 731 (1991); *see also Whitley v. Ercole,* 642 F.3d 278, 286 (2d

Cir. 2011) (quoting *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) ("[P]rocedural

default in the state court will . . . bar federal habeas review when the last state court

rendering a judgment in the case clearly and expressly states that its judgment rests on a

state procedural bar.") (internal quotation marks omitted)).

There are certain situations in which the state law basis for decision will not be

considered "adequate": (1) where failure to consider a prisoner's claims will result in a

"fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750; (2) where the state

procedural rule was not "'firmly established and regularly followed,'" *Ford v. Georgia*,

498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and

(3) where the prisoner had "cause" for not following the state procedural rule and was

"prejudice[d]" by not having done so.  *Wainwright v. Sykes*, 433 U.S. at 87.  In certain

limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376).

In order to find that the application of a generally sound rule is exorbitant, the court considers (1) whether the alleged procedural violation was actually relied upon by the state court and whether perfect compliance with the state rule would have changed the court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner "substantially complied" with the rule given the realities of trial and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

## III.  **Analysis of Petitioner's Claims**

### A.    **Guilty Plea**

Petitioner raises several arguments challenging the validity of his guilty plea.  He argues that his plea was not knowing, voluntary, and intelligent because he was under the influence of marijuana.  (Pet. at 7).  He also claims involuntariness to the extent that his attorney coerced him into pleading guilty.  (*Id.*).  Last, petitioner claims that his appellate waiver was invalid. (Pet. at 10).

"The Due Process Clause . . . requires an affirmative showing that a defendant's

plea is entered both knowingly and voluntarily before the trial court may accept the plea." *Hill v. Colvin*, No. 9:16-CV-1301 (MAD), 2018 WL 736013, at *14 (N.D.N.Y. Feb. 6, 2018) (citing inter alia *Godinez v. Moran*, 509 U.S. 389, 400 (1993)).  The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *De Leon v. United States*, No. 6:18-CR-06094, 2020 WL 3269139, at *4 (W.D.N.Y. June 17, 2020) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970) (quotation and footnote omitted)).

In evaluating whether a plea was knowing and voluntary, a court may consider, "among other things, [a petitioner's] allocution statements." *Carpenter v. Unger*, 9:10-CV-1240; 9:12-CV-0957 (GTS/TWD), 2014 WL 4105398, at *19 (N.D.N.Y. Aug. 20, 2014) (citing *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)).

In this case, the transcript of the proceeding at which petitioner ultimately pleaded guilty establishes that the trial court engaged in an extensive colloquy with

petitioner before accepting his guilty plea.  After confirming his desire to accept the government's offer, petitioner was placed under oath and asked a series of questions as to the nature of his plea.  (PA 14).  Petitioner testified that he was thinking clearly and not under the effects of any kind of medication.  (PA 15-16).  He acknowledged that, by accepting the plea, he forfeited his right to a jury trial, right to cross-examine witnesses, right to testify, and right to call witnesses on his own behalf.  (PA 16-19).  Petitioner further acknowledged that he had a full opportunity to speak with his attorney about "all of the relevant issues concerning [his] case, concerning the evidence that the prosecution [had] against [him], and about the possible defenses that [he] may have [had]."  (PA 16).  He stated that he was satisfied with his legal representation.  (*Id.*).  Petitioner further stated that he understood the plea was a global resolution of all of his pending criminal matters.  (PA 18-19).  Petitioner denied that he was being coerced or forced in any way to enter a guilty plea, and acknowledged that he was pleading guilty of his own free will.  (PA 18).

Moreover, Judge Lynch specifically explained to petitioner that, in addition to waiving his trial rights, petitioner was also waiving his right to appeal.  (PA 19-20).  After verbally confirming his understanding of the appellate waiver, petitioner reviewed a written appellate waiver with his attorney before signing it in front of the trial court, and testifying that he understood the waiver's terms and agreed to be bound by it.  (PA 20).  Petitioner then admitted to committing identity theft as charged in

Count 1 and Count 8 of the indictment. (PA 22-24).

Petitioner's sworn testimony directly contradicts his present contention that his guilty plea was not made knowingly and voluntarily. With respect to his allegations of 'coercion,' plaintiff stated in court, under oath, that he was pleading guilty of his own free will, in the absence of any coercion or "other promises or representations" made in order to force petitioner to plead guilty. (Plea 18, 21). "These in-court statements are afforded a 'strong presumption of verity' . . . and create a 'formidable barrier' to habeas relief." *De Leon v. United States,*, 2020 WL 3269139, at *5 (internal citations omitted); *see also Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution 'carry a strong presumption of verity,' and are generally treated as conclusive in the face of the defendant's later attempt to contradict them[.]' ") (internal quotation and citation omitted).

To this end, petitioner's responses belie his suggestion that he was under the influence of marijuana, or otherwise incapable of knowingly, intelligently, and voluntarily entering into the guilty plea. Petitioner's attempt to assign fault to the court for limiting its inquiry to "medication," and not specifically regarding marijuana, is disingenuous and lacks merit. The court clearly inquired into petitioner's state of mind during the plea allocation; confirming that petitioner was thinking clearly, was not under the effect of any kind of medication, and had an understanding of the rights he

16

was surrendering.  (PA 16-19).  Moreover, petitioner has not offered any proof that he was even under the influence of drugs on the day he entered the plea, or that he would have rejected the plea agreement and pursued trial, but for the alleged influence of marijuana.  As petitioner's present assertions are "wholly contradicted by the record . . . they are insufficient to entitle petitioner to relief."  *Woods v. Superintendent*, No. 9:19-CV-505 (GLS), 2020 WL 3642311, at *9 (N.D.N.Y. July 6, 2020) (citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)).

To the extent petitioner claims the court failed to inform him that his appellate waiver was "separate and distinct from [his] waiver of trial-related [r]ights," this contention is blatantly contradicted by the record.  "As a matter of New York State law, the courts require that a trial court conducting a plea colloquy distinguish between the constitutional rights that a defendant is automatically forfeiting by virtue of his guilty plea, from the statutory right to an appeal."  *Roland v. Rivera*, No. 06-CV-6543, 2011 WL 1343142, at *4 (W.D.N.Y. Jan. 6, 2011), *report and recommendation adopted*, No. 06-CV-6543L, 2011 WL 1327649 (W.D.N.Y. Apr. 7, 2011) (citation omitted).

Here, during the plea colloquy Judge Lynch specifically disclosed that

> the plea agreement requires that in addition to the waiver of your trial rights, that you also waive your right to appeal with respect to the conviction and the sentence, as long as the sentences are in accord with the agreement; do you understand that?

(PA 19-20).  Petitioner responded "Yes."  (PA 20).  Petitioner also reviewed a written

17

appellate waiver with the assistance of counsel, and signed it after agreeing to its terms. (PA 19-20; SR 70). The court later asked petitioner's counsel if he was satisfied that petitioner's waiver of "his trial and appellate rights" had been knowingly, intelligently, and voluntarily made. (PA 21). Counsel responded "Yes, your honor." (PA 22).

Petitioner advances no legitimate argument as to how the trial court's specific and direct handling of the appellate waiver was constitutionally deficient. In the absence of any federal precedent standing for the proposition that the trial court "must employ specific language when apprising a defendant pleading guilty of the individual rights relinquished," *Taylor v. Unger*, No. 1:11-CV-1078, 2012 WL 5288733, at *2 (W.D.N.Y. Oct. 23, 2012), petitioner has failed to allege an error of constitutional magnitude.

## B.    Speedy Trial

Petitioner contends that he "was not indicted in a timely manner" consistent with his federal and state[6] constitutional rights. (Pet. at 5). Specifically, he alleges that while the charges against him "stem from April 2016," he was not indicted until December 2016. (*Id.*).

For the following reasons, petitioner's claim cannot not succeed. At the outset,

---

[6] While the New York State Constitution does not contain a specific "speedy trial" clause, Article 1, § 6 of the State Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law." The New York Court of Appeals has held that an "unreasonable delay" in commencing the prosecution of a defendant may constitute a violation of due process under Article 1, § 6. *See Dearstyne v. Mazzuca*, 48 F. Supp. 3d 222, 238 (N.D.N.Y. 2011) (citing *People v. Singer*, 44 N.Y.2d 241 (1978)).

the role of courts reviewing habeas petitions is not to re-examine the determinations of

state courts on state law issues, but only to examine federal constitutional or statutory

claims.  28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Thus,

to the extent petitioner now seeks to vindicate his speedy trial rights under the New York

State Constitution, such state law claim is not cognizable in a federal habeas petition.

Petitioner also faces a procedural bar.  In his direct appeal to the Third

Department, petitioner argued that the trial court erred in denying his "speedy trial

motion" pursuant to New York Criminal Procedure Law 30.30(1)(a). (SR 241-46).  The

argument set forth in petitioner's appellate brief cites New York State precedent, and, in

denying petitioner's appeal, the Third Department described petitioner's claim as a

"deprivation of his statutory right to a speedy trial."  *People v. Harrison,* 176 A.D. 3d at

1264.  Petitioner failed to raise any speedy trial violations of a federal nature to the Third

Department. Because petitioner has already perfected the state court appeal to which he

is entitled, and he cannot properly present this claim in a § 440.10 motion because it is

record based and could have been raised on direct appeal, he has failed to exhaust the

claim.

Where, as here, a petitioner has foreclosed his ability to exhaust a claim in state

court, the claim is deemed exhausted, but barred by procedural default.  Thus, this court

is precluded from considering the merits of petitioner's federal speedy trial claim unless

he can show cause and prejudice, or if he can overcome the fundamental miscarriage of

justice exception.  Petitioner, however, advances no reason for failing to raise his federal speedy trial claim in state court in an effort to excuse his default.  Moreover, petitioner has fallen short of presenting any "credible and compelling claims of actual innocence," otherwise necessary to excuse his procedural default.[7]  *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019) (citation omitted).  Accordingly, petitioner's federal speedy trial claim is barred from habeas review because of petitioner's unexcused procedural default.

### C.    *Miranda* **Rights**

As a separate ground for habeas relief, petitioner states that he "had not been read [his] *Miranda* rights."  (Pet. at 5).  For several reasons, petitioner's conclusory allegation should be dismissed.  First, it is clear that petitioner did not assert this category of claim, by any means, in his direct appeal to the Third Department.  Because he no longer has a state forum to raise this a record-based claim, it is subject to procedural default.  Petitioner has provided no basis for this court to excuse his default – he does not allege any cause for his failure to raise this claim at the state level nor does he set forth any actual prejudice which occurred as a result of the alleged violation of his *Miranda* rights.  There is also no compelling evidence of innocence to excuse petitioner's default.  Accordingly, petitioner's claim should be dismissed on procedural grounds.

---

[7]Petitioner makes various self-serving contentions of innocence, to the effect that he "did not knowingly or intentionally" commit identity theft.  (Pet. at 7).  Petitioner maintains, without any supporting evidence, that he was using "gift cards," not "credit cards," and he "did not know that the information strip on the back of the gift cards had apparently been 'cloned.'"  (Pet. at 8).

Furthermore, "[a] habeas petition may be denied where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous." *Crews v. Miller*, No. 19-CV-2091, 2019 WL 4861421, at *13 (E.D.N.Y. Sept. 30, 2019) (quoting *Robles v. Lempke*, No. 09-CV-2636, 2011 WL 9381499, at *26 (E.D.N.Y. Sept. 9, 2011)). In this instance, petitioner has failed to adequately articulate the circumstances surrounding the alleged constitutional violation. Petitioner does not claim that he was ever interrogated, or that he gave a statement to the police. As respondent points out, prior to petitioner's guilty plea the government acknowledged that they would not seek to introduce any statement from petitioner to the police. (SR 43). In sum, the record is devoid of any factual information surrounding this issue. The district court should, therefore, dismiss petitioner's claim as "conclusory, vague, and frivolous, and thus insufficient to state a claim for habeas relief." *O'Diah v. Corcoran*, No. 09-CV-3580, 2013 WL 1339413, at *19 (E.D.N.Y. Mar. 29, 2013).

## D.    Ineffective Assistance of Counsel

Petitioner contends that he received ineffective assistance of counsel as follows: (1) defense counsel Mr. Rockmacher withdrew from petitioner's case, admitting he was not competent enough to handle the case, (2) petitioner's trial attorneys never raised the defense that petitioner did not "knowingly or intentionally" commit the crime of Identity Theft in the First Degree, (3) defense counsel Mr. Sofia "coerced" petitioner into pleading guilty. (Pet. at 5, 7-8).

The relevant federal law governing ineffective assistance of counsel was set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland.* First, the defendant must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth amendment." *Hudson v. New York,* No. 07-CV-1327, 2007 WL 3231970, at *2–3 (E.D.N.Y. Oct. 30, 2007) (citing *Strickland v. Washington,* 466 U.S. at 687). Under this prong, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington,* 466 U.S. at 689 (internal quotation marks and citations omitted).

Second, the defendant must satisfy the prejudice prong set forth in *Strickland* by showing that any deficiencies in counsel's performance actually prejudiced the defendant. *Id.* at 692–93. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether

the specific errors resulted in the required prejudice, a court should presume, absent

challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury

acted according to law." *Id.* at 694.

Upon review of an habeas petition claiming ineffective assistance of counsel,

"[t]he pivotal question is whether the state court's application of the *Strickland* standard

was unreasonable. This is different from asking whether defense counsel's performance

fell below *Strickland's* standard. Were that the inquiry, the analysis would be no

different than if, for example, [the district court] were adjudicating a *Strickland* claim on

direct review of a criminal conviction[.]" *Paige v. Lee*, 99 F. Supp. 3d 340, 345

(E.D.N.Y. 2015) (quoting *Harrington v. Richter,* 562 U.S. 86 (2011)). Therefore, to the

extent a habeas petitioner must show both that counsel's performance was unreasonable

and that the state court's decision to the contrary was unreasonable, a "doubly

deferential" standard of judicial review applies to ineffective assistance of counsel

claims analyzed under 28 U.S.C. § 2254(d)(1). *Santana v. Capra*, 284 F. Supp. 3d 525,

538 (S.D.N.Y. 2018) (citing *Knowles v. Mirzayance,* 556 U.S. 111 (2009)).

The court will address each of petitioner's ineffective assistance of trial counsel

claims in turn.

### 1.    Attorney Rockmacher's Withdrawal as Defense Counsel

Plaintiff was scheduled to be arraigned on January 4, 2017 before Judge Lynch in

Albany County Court. (SR 150-59). At the time, he was represented by attorney

23

Stephen Rockmacher. (*Id.*). When Mr. Rockmacher initially appeared for the arraignment, he indicated that he had experienced a "breakdown in the attorney/client relationship" with petitioner. (SR 151). He subsequently moved to be relieved as counsel, stating that he could not provide "the best legal representation possible" for petitioner. (SR 155). Judge Lynch granted Mr. Rockmacher's request, suggesting to counsel that he "evaluate in the future whether or not [he] would even entertain a retainer in a felony case if [he felt] not capable of completing the case." (SR 155-56). Petitioner was immediately appointed counsel from the public defender's office. (SR 156).

Petitioner did not raise this record-based claim in his direct appeal to the Third Department; it appears for the first time in his pending petition for habeas review. Thus, petitioner has failed to exhaust his state remedies with respect to this issue. Petitioner's unexhausted claim should be deemed exhausted but procedurally defaulted, however, because petitioner has no state-court forum in which to raise it.

The court finds no basis to excuse petitioner's procedural default as to this claim. Petitioner advances no cause for his default, or prejudice attached thereto, as necessary to overcome the procedural bar. There is nothing in the record to suggest that plaintiff was precluded from appealing his attorney's allegedly deficient representation at the arraignment stage, and petitioner has not alleged ineffective assistance of appellate counsel. Furthermore, as previously discussed petitioner has not come forward with overwhelming evidence tending to demonstrate that he is factually innocent, and

therefore cannot fulfill the requirements of the "fundamental miscarriage of justice" exception. Accordingly, petitioner's claim on this basis is subject to an unexcused procedural default, and should be dismissed.

### 2.   Defense Counsels' Failure to Raise Certain Defenses

Petitioner contends that his trial attorneys' conduct amounted to ineffective assistance in "not presenting [his] defense to court that [he] had used gift cards and not credit cards" . . . i.e. that petitioner "did not knowingly or intentionally commit the crime of Identity Theft in the [First] Degree." (Pet. at 7).

Petitioner did not raise this issue on direct appeal, nor does the record reflect that he has made any motions in state court pursuant to C.P.L. § 440 as of the date his petition was filed. Conceivably, petitioner could go back to state court and file a § 440 motion raising these off-the-record allegations of ineffective assistance of trial counsel. Thus, while petitioner's claim is unexhausted, he is not barred by procedural default. Nevertheless, the court recommends dismissal of this claim under 28 U.S.C. § 2254(b)(2), which provides that an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the petitioner to exhaust his state court remedies. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (A federal court may exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless"); *Padilla v. Keane*, 331 F. Supp. 2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant

the dismissal of meritless, unexhausted claims).

Specifically, petitioner's claim that certain defenses were not raised by his attorneys is meritless, because it was waived by his guilty plea. As previously set forth, the record reflects that petitioner's guilty plea was valid and this court finds no basis to disturb the state court's determination in this regard. It is well settled that "[a] defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." *Coffin*, 76 F.3d at 497. "[A] guilty plea does not 'waive' constitutional challenges so much as it conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue[.]" *United States v. Gregg,* 463 F.3d 160, 164 (2d Cir. 2006) (per curiam).

Here, petitioner's guilty plea waived his right to claim that counsel failed to raise adequate defenses in any state court motions or pre-trial proceedings, because it is associated with events that occurred prior to the entry of his guilty plea and bears no relation to petitioner's separate claim that his plea was involuntary. Thus, the petition should be denied as to this claim of ineffective assistance of counsel.

### 3.    Attorney Sofia's Alleged Coercion into Guilty Plea

Petitioner argues that public defender Vincenzio Sofia was ineffective for coercing him into accepting the plea agreement offered by the government, ultimately resolving those charges contained in the indictment, as well as the newer charges brought against

him.  (Pet. 8).

Petitioner raised this argument in his state court appeal, contending that Mr. Sofia
failed to investigate the underlying facts surrounding plaintiff's charges and merely told
petitioner that "the new charges were more serious than those in the indictment, and that
he had better take the plea or the judge would give him 7-14 years." (SR 251).  The
Third Department declined to address the merits of petitioner's argument on direct
review, noting that his contentions "concerned matters outside of the record and [were]
properly the subject of a C.P.L. article 440 motion[.]" *People v. Harrison*, 176 A.D.3d at
1265.  As discussed, petitioner did not file any § 440 motions prior to petitioning for
habeas relief.  (Pet. at 3).  Thus, petitioner's claim is unexhausted; however, he is not
barred by procedural default because petitioner could file a § 440 motion in state court
on this issue.  However, as discussed below and pursuant to 28 U.S.C. § 2254(b)(2),the
court finds petitioner's claim meritless and subject to dismissal.

To begin, petitioner's contention that he was "pressured" into pleading guilty by
Mr. Sofia is contradicted by his own sworn statements to the contrary at the plea
allocution.  Petitioner told the court, under oath, that no one had forced or pressured him
to plead guilty, that he'd had a "full opportunity" to speak with Mr. Sofia about all of the
issues concerning his case, including the evidence against him and possible defenses,
and that he was satisfied with the legal representation provided by Mr. Sofia.  (PA 16,
18).  As previously set forth, statements made at plea allocutions "carry a strong

presumption of verity" and "constitute a formidable barrier in any subsequent collateral

proceeding." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see, e.g., Lopez v. Miller*,

No. 05-CV-7060, 2007 WL 2032839, at *9 (S.D.N.Y. July 17, 2007) (state court entitled

to credit defendant's sworn statements during guilty plea allocution over later

self-serving allegations of coercion) (collecting cases); *Gomez v. Duncan*, No.

02-CV-846, 2004 WL 119360, at *19 (S.D.N.Y. Jan. 27, 2004) ("This Court may credit

[petitioner's] statements at the plea allocution—that his guilty plea was voluntary and

not the result of any threats or promises—over his later allegations of coercion.") (citing

cases).

　　　Moreover, petitioner has not met his burden on either prong of the *Strickland* test

with respect to counsel's alleged advice regarding the plea offer.  As to the first prong,

the court does not find that it was objectively unreasonable for petitioner's attorney to

advise him to plead guilty to two of the ten counts contained in the indictment, for less

than the maximum sentence to which petitioner was exposed in the indictment alone.

*Proctor v. McCarthy*, No. 19-CV-2988, 2020 WL 1149660, at *15 (S.D.N.Y. Mar. 10,

2020) ("Thus, counsel's advice was not deficient because he secured a sentence for

[petitioner] that was far more favorable than that which [petitioner] would have faced

had he been convicted at trial.") (collecting cases).

　　　Petitioner has also failed to establish the prejudice prong of the *Strickland* inquiry.

Beyond petitioner's bald assertions that he did not "knowingly or intentionally" commit

the crimes to which he pled guilty, there is no evidence in the record to suggest that

petitioner would have been acquitted, and there is "no basis on which to conclude that a

decision to reject the plea bargain would have been rational under the circumstances."

*Morton v. Perez*, No. 13-CV-3985, 2014 WL 407411, at *9 (S.D.N.Y. Feb. 4, 2014)

(internal quotation and citation omitted).  Because petitioner "received a much more

favorable sentence than if he had proceeded to trial and been convicted on the charges in

the indictment, he has experienced no prejudice."  *Proctor v. McCarthy*, 2020 WL

1149660, at *16.

Accordingly, petitioner's claim in this respect should be denied, as there is no

basis on which to conclude that his guilty plea was coerced by his attorney, or that

petitioner suffered from ineffective assistance of counsel in this regard.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.

These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing

*Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R.

Civ. P. 72.


Dated: February 25, 2021

Andrew T. Baxter
U.S. Magistrate Judge